## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TERESA MATTHEWS, *et al.*, <br><br>      *Plaintiffs*, <br><br> v. <br><br> DISTRICT OF COLUMBIA, *et al.*, <br><br>      *Defendants*. | Civil Action No. 20-0595 (DLF) |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT

## INTRODUCTION

Plaintiffs Reginald and Teresa Matthews allege that the District of Columbia (the District) improperly designated the area of Route 295 near Pennsylvania Avenue, S.E., as a work zone, or alternatively failed to post the required signs, and thus unlawfully ticketed and imposed doubled civil fines on them and other drivers for speed violations captured by a traffic camera at that location. Plaintiffs seek injunctive and declaratory relief, as well as damages and restitution, bring claims for unjust enrichment and money had and received, and allege violations of the Excessive Fines Clause of the Eighth Amendment and Due Process Clause of the Fourteenth Amendment.

The Complaint should be dismissed. Plaintiffs lack standing to request injunctive or declaratory relief because they face no risk of future harm, given that before this lawsuit was filed, the District removed the work zone designation and

speed reduction from the location at issue. Plaintiff Reginald Matthews also lacks standing to bring any claims because his citation was dismissed and he suffered no injury. Moreover, plaintiffs fail to state any constitutional violation, and cannot establish municipal liability under 42 U.S.C. § 1983 (Section 1983). Even if the Court disagrees, plaintiff Teresa Matthews's claims are still subject to dismissal under the doctrine of *res judicata* or, alternatively, collateral estoppel, because she paid the fine and admitted liability. Finally, if any claims survive, official-capacity defendant Mayor Muriel Bowser should be dismissed from this case because the District is already a named defendant.

## BACKGROUND

On November 8, 2019, plaintiffs Teresa Matthews and Reginald Matthews were each cited for speeding on Route 295, southwest bound near Pennsylvania Avenue, S.E., after an automated traffic camera at that location observed each of their vehicles traveling more than 10 miles per hour above the posted 40 miles per hour speed limit. *See* Compl. [1] ¶¶ 13, 23 (Teresa Matthews travelling 52 miles per hour); *id.* ¶¶ 32, 41 (Reginald Matthews travelling 55 miles per hour). Because the area was designated a work zone, each citation carried a doubled civil penalty of $200. *Id.* ¶¶ 11, 24, 42 (citing D.C. Code § 50-2201.04c). On December 19, 2019, Ms. Matthews admitted liability and submitted a payment of $200. *Id.* ¶ 29. Mr. Matthews, on the other hand, contested his ticket, and the notice of infraction was dismissed. *Id.* ¶ 48.

Plaintiffs do not dispute that there was a 40 miles per hour speed limit sign posted near the area where they were cited, *see id.* ¶¶ 17, 36, that there was a sign posted indicating the area was a work zone, and that another sign alerted drivers that fines for traffic violations would be doubled, *see id.* ¶ 17. Instead, plaintiffs allege that the District improperly designated as a work zone the particular area along Route 295 where they were cited, in violation of D.C. Code § 50-2201.02(20), because plaintiffs never personally observed any work taking place in that area. *Id.* ¶¶ 20-22, 38-40. Because the area was allegedly not a work zone, plaintiffs contend the speed limit should not have been reduced from 50 miles per hour to 40 miles per hour, and they should not have been ticketed or assessed a doubled civil fine. *Id.* ¶¶ 30, 47. Plaintiffs further allege that even if it were a work zone, the District failed to post multiple work zone signs as required by law. *Id.* ¶¶ 11-12, 30, 47.

On or before December 9, 2019, the District removed the work zone designation from this section of Route 295, and lifted the speed restriction. Decl. of. Joseph Dorsey (Dorsey Decl.), Ex. A ¶¶ 5-6. The speed limit returned to 50 miles per hour. *Id.* ¶ 6. Soon thereafter, the speed camera was calibrated to capture violations based on the 50 miles per hour speed limit, and doubled civil files were no longer assessed. Decl. of Lamont Hinton (Hinton Decl.), Ex. B ¶¶ 5-6.

On January 13, 2020, plaintiffs filed this putative class action in the Superior Court of the District of Columbia, bringing claims for unjust enrichment (Count I) and money had and received (Count II) based on the collection of doubled civil fines from infractions captured by the speed camera at issue. *Id.* ¶¶ 65-80. They also assert

violations of the Excessive Fines Clause of the Eighth Amendment (Count III) and the Due Process Clause of the Fourteenth Amendment (Count IV).[1] *Id.* ¶¶ 81-94. On February 28, 2020, the District removed the case to this Court. *See* Notice of Removal [1].

STANDARD OF REVIEW

## I.   Federal Rule of Civil Procedure 12(b)(1)

Under Rule 12(b)(1), "[a] court must dismiss a case when it lacks subject matter jurisdiction." *Mykonos v. United States*, 59 F.Supp. 3d 100, 103 (D.D.C. 2014) (quoting *Randolph v. ING Life Ins. & Annuity Co.*, 486 F.Supp. 2d 1, 4 (D.D.C. 2007)). This is true when the plaintiff lacks standing. *See Am. Freedom Law Ctr. v. Obama*, 821 F.3d 44, 49 (D.C. Cir. 2016). In resolving a motion to dismiss for lack of subject matter jurisdiction, "the factual allegations must be presumed true, and plaintiffs must be given every favorable inference that can be drawn from them." *Mykonos*, 59 F.Supp. 3d at 103 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "The court need not, however, accept as true 'a legal conclusion couched as a factual allegation' or make inferences that are unsupported by the facts set out in the complaint." *Id.* (citations omitted) (quoting *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006)).

Also, "in deciding a 12(b)(1) motion, a court need not limit itself to the complaint; rather, it 'may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction in the case.'" *Toth*

---

[1]      Plaintiffs raise their substantive due process claim under the Fourteenth Amendment, which does not apply to the District. *See Bolling v. Sharpe*, 34 U.S. 497, 498 (1954). The Due Process Clause of the Fifth Amendment applies to the District.

*v. Wells Fargo Bank, N.A.*, 82 F.Supp. 3d 373, 376 (D.D.C. 2015) (citations omitted); *see also Johnson v. Comm'n on Presidential Debates*, 202 F. Supp. 3d 159, 167 (D.D.C. 2016) (taking judicial notice of facts posted on the internet); *Sodexo Operations, LLC v. Not-For-Profit Hosp. Corp.*, 930 F. Supp. 2d 234, 237 n.3 (D.D.C. 2013) (stating that a court may take judicial notice of public records at the motion to dismiss stage).

## II.   <u>Federal Rule of Civil Procedure 12(b)(6)</u>

Dismissal is also appropriate when a party has failed to set forth "a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although the allegations in a complaint must be taken as true, a plaintiff must offer "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Jackson v. District of Columbia*, 826 F. Supp. 2d 109, 120 (D.D.C. 2011). Courts need not accept as true conclusory "assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 679. The Court is not required to adopt "inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint." *Kowal v. MCI Commc'ns Corp., Inc.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). "The complaint should be dismissed if it appears beyond doubt that under any reasonable pleading, [plaintiff] will be unable to prove any set of facts that would justify relief." *Bynum v. District of Columbia*, 257 F. Supp. 2d 1 (D.D.C. 2002) (citation omitted).

ARGUMENT

I.   **Plaintiffs Lack Standing To Seek Prospective Relief, and Plaintiff Reginald Matthews Lacks Standing To Bring Any Claims.**

Every plaintiff in federal court must meet the constitutional minimum for Article III standing by showing an injury, causation and redressability. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). "[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Davis v. FEC*, 554 U.S. 724, 734 (2008) (internal quotation marks omitted) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)). In a case "where the plaintiffs seek declaratory and injunctive relief, past injuries alone are insufficient to establish standing." *Dearth v. Holder*, 641 F.3d 499, 501 (D.C. Cir. 2011). Rather, a plaintiff must show that he faces an "ongoing injury or faces an immediate threat of injury." *Id.* (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983)); *see also O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974). Thus, there is "a significantly more rigorous burden to establish standing" when parties seek injunctive relief rather than simply a remedy for past injuries. *Swanson Grp. Mfg. LLC v. Jewell*, 790 F.3d 235, 240 (D.C. Cir. 2015) (quotations omitted) (citing *Chamber of Commerce v. EPA*, 642 F.3d 192, 200 (D.C. Cir. 2011)).

A.   **Plaintiffs Do Not Have Standing To Seek Injunctive or Declaratory Relief Because They Face No Risk of Future Harm.**

Plaintiffs do not have standing to seek injunctive or declaratory relief because they cannot show any ongoing injury or any "imminent future injury." *Swanson*, 790 F.3d at 240; *see also Clapper v. Amnesty Int'l USA,* 133 U.S. 1138, 1150 n.5 (2013)

6

(standing for injunctive relief requires a showing of "substantial risk" the harm will occur). Plaintiffs filed this lawsuit on January 13, 2020, claiming they were harmed by the District's demand and collection of doubled civil fines for traffic violations on Route 295 near Pennsylvania Avenue, S.E. *See* Compl. ¶¶ 66, 77, 82, 89. Plaintiffs ask the Court, in part, to declare "the [District's] practice of issuing [Automated Traffic Enforcement] ATE violation notices that doubled the civil fines for *this* non-existent or improperly marked work zone is unlawful and unenforceable," *id.* ¶ 104(a) (emphasis added), and to grant injunctive relief "prohibiting the [District] from collecting on and/or otherwise enforcing ATE violation notices that double the civil fines for *this* non-existent or improperly marked work zone," *id.* ¶ 104(b) (emphasis added).

However, on or before December 9, 2019—prior to the filing of this lawsuit—the District removed the work zone designation from this area on Route 295 and lifted the speed restriction based on the near-completion of an Anacostia bridge rehabilitation project. Dorsey Decl., ¶¶ 5-6; *see also* Press Release, Dist. Dep't of Transp., DDOT Revises Speed Reduction Zone in I-295 Corridor as Two Projects Near Completion (Dec. 9, 2019), *available at* https://ddot.dc.gov/release/ddot-revises-speed-reduction-zone-i-295-corridor-two-projects-near-completion. The speed camera was then calibrated to issue citations based on the 50 miles per hour speed limit. Hinton Decl. ¶¶ 5-6. The District also stopped imposing doubled civil fines for speeding infractions in this area. *Id.* ¶ 6. Because there is no "continuing violation or the imminence of a future violation," *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83,

108 (1998), plaintiffs do not have standing to seek declaratory or injunctive relief, and their request should be dismissed.

**B.**    **Plaintiff Reginald Matthews Does Not Have Standing To Bring Any Claims Because He Has Not Alleged Any Injury.**

As noted above, to have standing, a plaintiff must establish that he suffered an injury in fact that is fairly traceable to the challenged conduct and may be redressed by a favorable court decision. *Lujan*, 504 U.S. at 560–61. Additionally, a plaintiff "must show that he 'has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged official conduct and the injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" *Lyons*, 461 U.S. at 101–102 (quoting *Golden v. Zwickler*, 394 U.S. 103, 109–110 (1969)) (other citations omitted).

Plaintiffs allege that they were injured when they were required to pay the District doubled civil fines for their traffic infractions. Compl. ¶¶ 66, 77, 82, 89. However, Mr. Matthews alleges no such injury; a hearing examiner dismissed his citation and he did not pay the fine.[2] *Id.* ¶ 48. He therefore lacks standing and his claims should be dismissed. *See Spokeo Inc. v. Robins*, 136 US 1540, 1547 (2016) ([I]njury in fact, the first and foremost of standing's three elements … is a constitutional requirement …." (internal quotations omitted).

---

[2]    Plaintiffs allege that Mr. Matthews was harmed by his wife's payment of her fine, presumably based on a theory that as a married couple, they share finances. *See* Compl. ¶ 31. If the Court finds he has such a joint claim, it should be analyzed in the same respect as Ms. Matthews's claims and dismissed for the same reasons outlined below.

## II.   The Complaint Should Be Dismissed Because Plaintiffs Fail To State Claims for Relief on the Merits.

Even aside from these threshold jurisdictional issues, plaintiffs have failed to state a claim for relief on the merits. Their claims fall short of the pleading standard and should be dismissed. *Iqbal*, 556 U.S. at 678.

### A.   The Complaint Does Not State a Claim for Unjust Enrichment or Money Had and Received.

In their first claim alleging unjust enrichment, plaintiffs contend that their payment of a doubled civil fine was a benefit conferred upon the District, Compl. ¶¶ 69, 71, and that the District's retention of such a payment "violates the fundamental principles of justice, equity and good conscience, and the circumstances are such that it would be inequitable for the [District] to retain the [payment]." *Id.* ¶ 73.

Unjust enrichment is a legal doctrine rooted in the common law concept of a "quasi-contract." *Jordan Keys & Jessamy, LLP v. St. Paul Fire & Marine Ins. Co.*, 870 A.2d 58, 63 (D.C. 2005). In practice, it serves as a tool for enforcement of a contractual remedy between parties when no valid contract exists. *Id.* (citing Black's Law Dictionary 324 (6th ed. 1990)). The plaintiff must establish:  (1) that he or she conferred a benefit on the defendant; (2) the defendant retained the benefit conferred; and (3) the defendant's retention of the benefit is unjust. *Peart v. D.C. Hous. Auth.*, 972 A.2d 810, 813-14 (D.C. 2009). The third prong in particular is a subjective inquiry properly considered on a case-by-case basis. *Id.* at 814.

Here, plaintiffs are unable to establish all three elements. Mr. Matthews's claim fails on the very first because a hearing officer dismissed his citation and he

never paid the District anything. Compl. ¶ 48. Thus, he did not confer a "benefit" on the District. As to Ms. Matthews, it is not unjust for the District to retain a fine paid by a driver who admits liability and acknowledges that she was speeding, *id.* ¶ 29, because "[t]he regulation of highway speed is one of the most pressing obligations of a state." *Agomo v. Fenty*, 916 A.2d 181, 193 (D.C. 2007) (quoting *Smith v. District of Columbia*, 436 A.2d 53, 58 (D.C. 1981)). Moreover, unjust enrichment is a cause of action based on an implied contract and is, therefore, only appropriate when "there has been no agreement or expression of assent, by word or act, on the part of either party involved." *Jordan Keys*, 870 A.2d at 63 (quoting *Bradkin v. Leverton*, 257 N.E.2d 643 (N.Y. 1970)). Here, by paying the fine, Ms. Matthews admitted she was liable for the conduct cited in the notice she received, making the District's retention of the fine fully justified. *See* Teresa Matthews Notice of Infraction, Ex. C at 2 ("To Admit: You may admit to the infraction ... by paying the fine.").

Plaintiffs also bring a claim for money had and received, alleging that the District received money in the form of fines from the plaintiffs, which, "in all fairness," it should be required to return. Compl. ¶¶ 77, 79. Money had and received is a common law theory "very similar" to unjust enrichment, as it is established "[w]here one person receives money that in equity and good conscience belongs to another." *Credit Lyonnais-N.Y. v. Wash. Strategic Consulting Grp., Inc.*, 886 F. Supp. 92, 93 (D.D.C. 1995) (citing *4934, Inc. v. D.C. Dep't of Emp't Servs.*, 605 A.2d 50, 56 (D.C. 1992) and *Hillyard v. Smither & Mayton, Inc.*, 76 A.2d 166, 167 (D.C. 1950)); *see also Bates v. Nw. Human. Servs., Inc.*, 466 F. Supp.2d 69, 102-03 (D.D.C. 2006) (analyzing

a money had and received claim as if one for unjust enrichment). Plaintiffs' claim for money had and received fails for the same reasons their unjust enrichment claim fails. Here, the District never had or received any money from Mr. Matthews, nor does "equity and good conscience" require that the District reimburse a fine paid by Ms. Matthews following her admission of liability for the underlying citation. *Cf. Kovach v. District of Columbia*, 805 A.2d 957, 962 n.7 (D.C. 2002) ("There is nothing irrational about the District's decision not to refund fines to persons who have admitted liability.").

### B.   The Complaint Does Not State a Claim for a Violation of the Excessive Fines Clause.

Plaintiffs assert that the District violated their constitutional protection against excessive fines when it imposed doubled civil fines for ATE violations that occurred in an alleged work zone they claim did not exist. Compl. ¶¶ 82-84. Plaintiffs are wrong.

The Eighth Amendment to the Constitution prohibits the government from imposing excessive fines. U.S. Const., amend. VIII. "In evaluating a claim under the Excessive Fines Clause, 'the standard of gross disproportionality' requires a court to 'compare the amount of the forfeiture to the gravity of the [] offense. If the amount of the forfeiture is grossly disproportional to the gravity of the defendant's offense, it is unconstitutional.'" *Pimentel v. City of Los Angeles*, Civil Action No. 14-1371 FMO, 2018 U.S. Dist. LEXIS 85054, at *11 (C.D. Cal. May 21, 2018) (quoting *United States v. Bajakajian*, 524 U.S. 321, 336-37 (1998)). The four factors to consider in weighing proportionality are:  (1) the nature and extent of the crime, (2) whether the violation

was related to other illegal activities, (3) the other penalties that may be imposed for the violation, and (4) the extent of the harm caused. *United States v. Bikundi*, 926 F.3d 761, 795 (D.C. Cir. 2019) (citing *Bajakajian*, 524 U.S. 321 at 336-37).

Mr. Matthews's Eighth Amendment claim fails for the same reason his other claims fail:  His notice of infraction was dismissed, and he did not pay any fine, let alone an excessive one. Ms. Matthews's claim also fails because even if the Court credits her allegation that she "never observed any construction, maintenance, and/or utility work" in this area, Compl. ¶ 22, the $200 fine for speeding was not "grossly disproportionate" to the offense and therefore not excessive. *Bajakajian*, 524 U.S. 321, 337 (1998). Ms. Matthews concedes she was travelling 52 miles per hour when the posted speed limit was 40 miles per hour. Compl. ¶¶ 15-17. And Ms. Matthews does not allege that she was unaware of the reduced speed limit or that she could not see the posted speed limit sign. *Id.* ¶¶ 15-19. Thus, she knowingly traveled at least 12 miles per hour over the posted speed limit—a clear violation of the law—and voluntarily paid the $200 fine that was assessed.

In *Pimentel*, the district court analyzed whether the city's fines for parking meter violations were constitutionally excessive. 2018 U.S. Dist. LEXIS 85054, at *11-23. There was no dispute that meter violations caused harm to the city because of their effects on traffic flow, congestion, and fiscal loss. *Id.* at *22. The court held that even if the harm to the city was minimal, imposition of a $63 fine for a parking meter violation, along with any additional penalties, was not grossly disproportionate to the harm so as to violate the Excessive Fines Clause. *Id.* at *23.

Similarly, in *Towers v. City of Chicago*, 173 F.3d 619, 626 (7th Cir. 1999), the court found even the imposition of a $500 fine against the owner of a vehicle in which illegal drugs or firearms were found, whether or not the owner was in possession of the vehicle or aware of the illegal items, was not an excessive or disproportionate penalty. Although $500 was not a small sum, "the City, in fixing the amount, was entitled to take into consideration that the ordinances must perform a deterrent function." The same applies here:  A $200 fine for speeding—which causes countless accidents, injuries and deaths each year——is not grossly disproportionate to the offense. Fines for speeding "are valid municipal endeavors; [l]ike any other exaction, a fine does more than raise revenue: [i]t also discourages the taxed activity." *Idris v. City of Chicago*, 552 F.3d 564, 56 (7th Cir. 2009). The $200 fine here was not excessive because the District has "a legitimate interest in deterring speeding to ensure public safety." *Dixon v. District of Columbia*, 666 F.3d 1337, 1342 (D.C. Cir. 2011).

### C.     The Complaint Does Not State a Claim Under Substantive Due Process.

Plaintiffs assert that they have a "protectable property interest in the payment of fines for traffic violations." Compl. ¶ 88. They allege that the District "unreasonably, arbitrarily and irrationally" imposed and collected doubled civil fines for traffic violations on Route 295 with an "improper purpose (*i.e.*, to raise revenue under the pretext of public safety) [which] is arbitrary and shocks the conscience," *id.* ¶¶ 90-92, violating plaintiffs' substantive due process rights. The claim cannot be sustained.

The Fifth Amendment prohibits the government from depriving people of life, liberty or property without due process of law. U.S. Const., amend. V.[3] To state a claim under substantive due process, plaintiffs must first allege there is a constitutionally recognized property interest at stake. *See Yates v. District of Columbia*, 324 F.3d 724, 725–26 (D.C. Cir. 2003) (asking first whether plaintiff possessed a property interest before evaluating whether the official conduct he complained of was egregious); *George Wash. Univ. v. District of Columbia*, 318 F.3d 203, 206 (D.C. Cir. 2003) (stating that although the "doctrine [of substantive due process] normally imposes only very slight burdens on the government to justify its actions, it imposes none at all in the absence of a liberty or property interest"). The next inquiry is "whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Abdelfattah v. U.S. Dep't of Homeland Sec.*, 787 F.3d 524, 540 (D.C. Cir. 2015) (quotations omitted).

### 1.    Plaintiffs Do Not Have a Protected Interest in the Payment of Traffic Fines.

Before turning to whether government action is so "egregious" as to "shock the contemporary conscience," the Court should "first determine precisely what constitutional right has allegedly been violated." *Harvey*, 798 F.3d at 1049–50. Here, plaintiffs claim they have a "protectable property interest in the payment of fines for

---

[3]      *See* footnote 1, above.

traffic violations." Compl. ¶ 88.[4] This fails under substantive due process for two reasons.

First, the Constitution has an explicit provision protecting against improper fines—the Excessive Fines Clause in the Eighth Amendment. Plaintiffs cannot, therefore, repackage their claim under the general rubric of substantive due process. *See County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) ("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing" a claim.) (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994)).

Second, even if plaintiffs could proceed under a substantive due process theory, they have failed to allege the deprivation of a constitutionally cognizable interest in "the payment of fines for traffic violations." As already noted, Mr. Matthews did not pay the fine—his notice of infraction was dismissed—so he has suffered no deprivation or harm. Compl. at ¶ 48. Although he alleges he was "forced to expend substantial time and endure substantial inconvenience fighting this citation," *id.*, that does not constitute a deprivation of the property interest plaintiffs claim to possess. *Id.* at ¶88.

Ms. Matthews's claim fares no better. The Due Process Clause protects only "fundamental rights and liberties which are, objectively, deeply rooted in this

---

[4]     Presumably, plaintiffs desire *not* to be required to pay what they consider improper fines for traffic violations.

Nation's history and tradition … and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997) (internal quotations and citations omitted). Neither the Supreme Court nor the D.C. Circuit have ever held a property interest in the payment of traffic fines to be fundamental or "deeply rooted in this Nation's history and tradition." *Id.*; *see also Idris*, 552 F.3d at 566 (holding there is no fundamental property interest in payment of $90 traffic fine). Because Ms. Matthews has no fundamental interest in the payment of traffic fines, her substantive due process claim fails. *See Abdelfattah*, 787 F.3d at 541 ("[M]erely labeling a government action as arbitrary and capricious, in the absence of a deprivation of life, liberty, or property, will not support a substantive due process claim") (quoting *Singleton v. Cecil*, 176 F.3d 419, 424 (8th Cir. 1999) (en banc)).

### 2.    Plaintiffs Do Not Allege Behavior that Shocks the Conscience.

Even if plaintiffs had alleged a protected property interest, a claim for substantive due process must also allege conduct that is "conscience shocking, in a constitutional sense." *Lewis*, 523 U.S. at 846 (internal quotation marks omitted) (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 128 (1992)); *see also Harron v. Town of Franklin*, 660 F.3d 531, 536 (1st Cir. 2011) (explaining that to shock the conscience, action must be "truly outrageous, uncivilized, and intolerable"). The question is whether the conduct itself, not the result, shocks the conscience. *See id.* at 849 ("[L]iability for negligently inflicted harm is categorically beneath the threshold of constitutional due process."); *J.E.C.M. ex rel. Saravia v. Lloyd*, 352 F.

16

Supp. 3d 559, 587 (E.D. Va. 2018) ("To be sufficiently egregious [for substantive due process violation], the official conduct must do more than produce a harmful or unfortunate result …."). Conduct found to "shock the conscience" includes a police officer forcibly pumping an individual's stomach, *see Rochin v. California*, 342 U.S. 165, 172–73 (1952), and a corrections officer's brutal and repeated beatings of an inmate. *See Norris v. District of Columbia*, 737 F.2d 1148, 1151 (D.C. Cir. 1984).

Nothing in the Complaint comes close to the conscience-shocking standard. The Complaint merely challenges the designation of a particular area of highway as a work zone, and the imposition and collection of doubled fines for traffic violations in that area. Compl. ¶¶ 87-93. This fails to meet the requirement of "egregious" or "outrageous" conduct. *See Abdelfattah*, 787 F.3d at 540. Plaintiffs attempt to support their argument by alleging that the District's "improper purpose (*i.e.*, to raise revenue under the pretext of public safety) is arbitrary and shocks the conscience." Compl. at ¶ 92. Even if the District were doubling fines to raise revenue—which is disputed— that conduct would not be egregious or shock the conscience. *See Idris*, 552 F.3d at 566 ("A system that simultaneously raises money and improves compliance with traffic laws has much to recommend it and cannot be called unconstitutionally whimsical.").

### III.   If the Court Finds Plaintiffs Have Sufficiently Alleged a Constitutional Violation, the Complaint Should Still Be Dismissed Because Plaintiffs Cannot Establish Municipal Liability Under Section 1983.

Section 1983 provides a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States.

42 U.S.C. § 1983. This provision authorizes lawsuits to enforce certain constitutional protections, but "does not provide an avenue for relief every time a state actor violates a federal law." *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 119 (2005). Local governments, including the District, are "persons" for purposes of Section 1983, but municipal liability cannot be predicated on a *respondeat superior* theory. *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690-91 (1978). Rather, "[p]laintiffs who seek to impose liability on local governments under § 1983 must prove that 'action pursuant to official municipal policy' caused their injury." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Monell*, 436 U.S. at 691).

The D.C. Circuit has identified four ways official municipal policy can be demonstrated:  (1) express municipal policy, (2) actions of a final municipal "policymaker," (3) persistent conduct by non-policymakers (*i.e.*, "custom" with force of law), and (4) "deliberate indifference" to a risk of constitutional injury. *See Baker v. District of Columbia*, 326 F.3d 1302, 1306-07 (D.C. Cir. 2003) (citations omitted). Each theory has its own "elements," which a Section 1983 plaintiff bears the burden of pleading. *Blue v. District of Columbia*, 811 F.3d 14, 20 (D.C. Cir. 2015). Additionally, under any theory, a municipal liability claim separately requires proof of causation—specifically, an "affirmative link" between the alleged municipal policy and the alleged constitutional violation, "such that [the former] was the moving force behind the [latter]." *Baker*, 326 F.3d at 1306.

Plaintiffs' theory of municipal liability is unclear but fails regardless. The Complaint points to two provisions of the D.C. Code governing the doubling of fines

for traffic violations that occur in a work zone, but plaintiffs' claims are premised on the District issuing "violation notices that do not comply" with the requirements of those provisions, D.C. Code §§ 50-2201.04c and 50-2201.02(20). Compl. ¶ 97; *see also id.* ¶¶ 30, 47 ("[T]his area on DC 295 does not constitute a work zone as defined in D.C. Code, and … the alleged zone was not established with the mandatory requirements of the D.C. Code, in that it lacked multiple signs or notices."). Thus, it is not the express municipal policy that caused the alleged harm, but rather the District's alleged failure to follow the express policy, which is insufficient to establish municipal liability. *See Davis v. District of Columbia*, 800 F. Supp. 2d 28, 35 (D.D.C. 2011) (holding there is no *Monell* liability where the alleged injury was caused by actions "<u>in violation of</u>" official policy because "policy was not in any way the 'moving force' behind the alleged violations") (emphasis in original). Similarly, the Complaint fails to plead any particular action taken by Mayor Bowser that caused the alleged injury. *See Parrat v. Taylor*, 451 U.S. 527, 537 n.3 (1981) (finding "merit" in argument that no *Monell* liability attaches when "subordinates … [are alleged to have] violated established procedures which, if properly followed, would have" prevented the alleged injury).

The Complaint also fails to allege that any District custom or practice caused the plaintiffs' alleged injuries. A municipality's custom or unwritten policy can be enough to impose Section 1983 liability if it is "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Dickerson v. District of Columbia*, 315 F. Supp. 3d 446, 456 (D.D.C. 2018) (quoting *Monell*, 436 U.S. at 691). "When a

plaintiff seeks to establish municipal liability in the absence of an explicit policy, he must allege 'concentrated, fully packed, precisely delineated scenarios as proof that an unconstitutional policy or custom exists.'" *Ryan v. District of Columbia*, 306 F. Supp. 3d 334, 346 (D.D.C. 2018) (quoting *Page v. Mancuso*, 999 F.Supp.2d 269, 284 (D.D.C. 2013)). A claim for municipal liability that fails to do "more than recite the requisite causal elements of custom or policy liability" is insufficient. *Smith v. District of Columbia*, 674 F. Supp. 2d 209, 212 (D.D.C. 2009).

Here, the Complaint contains factual allegations concerning the designation of a single work zone, the signs that were posted alerting drivers to the existence of the work zone and the reduced speed limit, and the resulting imposition of doubled fines for infractions issued by a single speed camera. Compl. ¶¶ 13-24, 32-42. Plaintiffs do not challenge the use of traffic cameras generally or the District's ability to collect doubled fines in properly designated work zones, and the Complaint lacks any factual allegations supporting the existence of a practice or custom that led to the allegedly improper designation here, or anywhere else. When "the complaint sets forth no factual allegations regarding the existence and enforcement of a municipal policy, custom or practice that directly caused a violation … [t]his pleading defect is fatal." *Collington v. District of Columbia*, 828 F. Supp. 2d 210, 215 (D.D.C. 2011); *see also Doe v. District of Columbia*, 796 F.3d 96, 105 (D.C. Cir. 2015) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing,

unconstitutional municipal policy.") (quoting *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985) (alteration omitted)).

## IV. Plaintiff Teresa Matthews's Claims Are Barred by *Res Judicata*; Alternatively, Her Claims Are Barred by Collateral Estoppel.

Even if the Court disagrees with the arguments presented above, Ms. Matthews's claims are still subject to dismissal under the doctrine of *res judicata* or, alternatively, collateral estoppel. As noted above, Ms. Matthews was issued a citation for speeding in a work zone after a camera located on Route 295 captured her vehicle travelling 52 miles per hour in a 40 miles per hour zone, and she was assessed a $200 doubled civil fine. Compl. ¶¶ 15-24. On December 19, 2019, she paid the fine. *Id.* ¶ 29. Because the facts underlying her claims in this case are the same as those underlying her citation, and she had the opportunity to contest the citation through an administrative hearing and raise her constitutional claims through the administrative appeals process, her claims are now barred by *res judicata* or, alternatively, collateral estoppel.

### A. Ms. Matthews's Claims Are Barred by *Res Judicata*.

Under District of Columbia law, claims that could have been, but were not, raised in a prior action are ordinarily barred by the doctrine of *res judicata*, or claim preclusion.[5] *Crane v. Crane*, 614 A.2d 935, 938 (D.C. 1992) ("Principles of res judicata

---

[5]      District of Columbia law applies because "[f]ederal courts extend to state court judgments the same preclusive effect those judgments would receive in the originating state." *Brewer v. District of Columbia*, 105 F. Supp. 3d 74, 85–86 (D.D.C. 2015) (citing 28 U.S.C. § 1738); *Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 81 (1984) (holding state court judgments are given the same preclusive effect they would have in the rendering state's courts).

preclude a party from raising claims which he or she has already raised, *or had the opportunity to raise*, in an earlier proceeding.") (emphasis in original); *Watergate W., Inc. v. Barclays Bank, S.A.*, 759 A.2d 169, 179 (D.C. 2000) (citing *Patton v. Klein*, 746 A.2d 866, 869-70 (D.C. 1999) ("The doctrine operates to bar in the second action not only claims which were actually raised in the first, but also those arising out of the same transaction which could have been raised.")). "Courts in the District of Columbia use a three-part test in determining the applicability of claim preclusion: "(1) whether the claim was adjudicated finally in the first action; (2) whether the present claim is the same as the claim which was raised or which might have been raised in the prior proceeding; and (3) whether the party against whom the plea is asserted was a party or in privity with a party in the prior case." *Sheppard v. D.C.*, 791 F. Supp. 2d 1, 6 (D.D.C. 2011). Applying these principles, Ms. Matthews's claims are barred.

### 1.   Ms. Matthews's Payment of the Fine Was a Final Adjudication.

*Res judicata* applies to the findings of administrative proceedings "when the agency is acting in a judicial capacity, resolving disputed issues of fact properly before it which the parties have an adequate opportunity to litigate." *Oubre v. D.C. Dep't of Emp't Servs.*, 630 A.2d 699, 703 (D.C. 1993) (citing *William J. Davis, Inc. v. Young*, 412 A.2d 1187, 1194 (D.C. 1980)). "The threshold inquiry is whether the earlier proceeding is the essential equivalent of a judicial proceeding." *Kovach*, 805 A.2d at 960 (quoting *Oubre*, 630 A.2d at 703).

In the District, the system for adjudication of traffic violations detected by cameras, referred to as Automated Traffic Enforcement (ATE), is governed by the Traffic Adjudication Act, D.C. Code § 50–2301.01, *et. seq.* (2001). Motorists issued citations under this statute have three options to respond:  (1) admit to the commission of the infraction by payment of the civil fine; (2) admit with explanation; or (3) deny the commission of the infraction. D.C. Code § 50-2302.05(a). An owner may deny the infraction and contest the ticket either by mail, through the Department of Motor Vehicles (DMV) website, or in person at a walk-in hearing. D.C. Code § 50-2302.05(b)(1). At the hearing, an owner has the right to present testimony and evidence to dispute liability for the infraction and contest the amount of the fine, and the District has the burden to establish the violation by "clear and convincing evidence." D.C. Code § 50-2302.06; 18 D.C.M.R. § 3012. If the owner receives an adverse decision on either liability or the amount of the fine, the owner has the right to appeal the decision to an Appeals Board, *see* D.C. Code § 50-2304.02; 18 D.C.M.R. § 3014.6, and ultimately to the D.C. Superior Court. *See* D.C. Code § 50-2304.05.

In *Kovach v. District of Columbia*, the D.C. Court of Appeals found that the administrative hearing process for traffic and motor vehicle violations is judicial in nature, and "supports application of principles of *res judicata.*" 805 A.2d at 961. The court based its decision on the procedural protections that exist in this context. *See id.* Perhaps more importantly, the court found that payment of the fine for a violation has the same preclusive effect as an adverse decision rendered after an

administrative hearing. *Id.* at 962. Therefore, Ms. Matthews's payment of the fine for her citation was a final adjudication for purposes of *res judicata*.

2.  **Ms. Matthews's Claims Arise from the Same Cause of Action and Could Have Been Raised Through the Administrative Hearing and Appeals Process.**

In determining whether a party's claims are barred, the court looks to whether they arise from the same cause of action, *Patton*, 746 A.2d at 870 (D.C. 1999), and whether the claims could have been raised in the prior proceeding. *Crane*, 614 A.2d at 938. In determining whether claims arise from the same cause of action, the court examines whether "there is a common nucleus of facts." *Patton*, 746 A.2d at 870. "Thus, a party is barred from initiating, in a subsequent suit, a claim based on facts 'related in time, space, origin or motivation' to the original case." *Watergate W.*, 759 A.2d at 179 (quoting RESTATEMENT (SECOND) JUDGMENTS § 24(2) (1982)) *see also v. Gov't Emps. Ins. Co. (GEICO)*, 618 A.2d 181, 183 (D.C. 1992) ("[T]he nature and scope of a cause of action is determined by the factual nucleus, not the theory on which a plaintiff relies.").

Ms. Matthews's claims in this case arise out of her November 8, 2019 citation for speeding in a work zone, and share the same "factual nucleus" with the underlying citation and the claims she could have raised in an administrative hearing had she contested the citation:  that there was no operative work zone in the area where she was cited, and if there was, the signage was improper. Compl. ¶¶ 13-31; *see also Carroll v. City of Cleveland*, 522 F. App'x 299, 304 (6th Cir. 2013) (finding *res judicata* barred federal litigation arising from a traffic violation, after payment of the fine, because the facts underlying the litigation were "identical to the facts that confronted

the plaintiffs when they received their notices of liability"). Instead of paying the fine, Ms. Matthews could have denied the violation. At an administrative hearing, she would have had the opportunity to present testimony that she never observed any work in the area and to argue that the work zone designation violated D.C. Code § 50-2201.02(20), and therefore the speed limit should have been 50 miles per hour. Further, she could have presented photographs of the work zone signage and argued, as she does now, that it failed to comply with the requirements of D.C. Code § 50-2201.04c.

Even Ms. Matthews's constitutional claims and requests for injunctive and declaratory relief could have been raised through the administrative appeals process. *See* D.C. Code § 2-510(a)(3). D.C. Code § 2-510(a)(3) allows a party to raise a constitutional challenge to agency action through judicial review of an administrative decision in D.C. Superior Court. *See*, *e.g.*, *DeVita v. District of Columbia*, 74 A.3d 714 (D.C. 2013) (deciding a constitutional challenge to the District's use of ATE through a motorist's administrative appeal of an adverse hearing decision finding him liable for speeding). Because Ms. Matthews had the opportunity and failed to raise her claims previously through the administrative appeals process, she is barred by *res judicata* from raising them now. *See Gilles v. Ware*, 615 A.2d 533, 539 (D.C. 1992) (citations omitted) (after "ample opportunity to litigate," plaintiff cannot "create a new cause of action merely by restating his claim" under a different legal theory); *see also Carroll*, 522 F. App'x at 304 (holding *res judicata* barred motorists' due process claims arising out of traffic infractions where motorists paid the fines instead of

contesting the ticket because they could have raised constitutional claims through the administrative appeals process in state court); *Idris*, 552 F.3d at 565 ("Because all plaintiffs had an opportunity to present their contentions in the administrative process, and then to state court, the City might well have had a good argument that claim preclusion bars this litigation. Litigants can't reserve federal issues for a federal court.").

**B.      Alternatively, Ms. Matthews's Claims Are Barred by Collateral Estoppel.**

District of Columbia law also recognizes the doctrine of collateral estoppel (or issue preclusion), which "restricts a party in certain circumstances from relitigating issues or facts actually litigated and necessarily decided in an earlier proceeding." *Kovach*, 805 A.2d at 962 (internal quotation and citation omitted). Collateral estoppel bars a court in a subsequent action from reaching a decision on an issue of fact or law decided in an earlier case where "(1) the issue is actually litigated and (2) determined by a valid, final judgment on the merits; (3) after a full and fair opportunity for litigation by the parties or their privies; (4) under circumstances where the determination was essential to the judgment, and not merely dictum." *Wash. Med. Ctr., Inc. v. Holle*, 573 A.2d 1269, 1283 (D.C. 1990) (citing *Smith*, 562 A.2d at 617); *Ali Baba Co. v. WILCO, Inc.*, 482 A.2d 418, 421 (D.C. 1984)).

For many of the same reasons Ms. Matthews's claims are barred by *res judicata*, they are also barred by collateral estoppel. The court in *Kovach* held that for purposes of collateral estoppel, payment of a traffic fine in the District operates as an adjudication of the facts essential to liability for the infraction, and a final

26

decision on the merits. 805 A.2d at 962. Ms. Matthews had a full and fair opportunity to challenge her liability for the offense through the administrative process based on the same factual issue she raises now:  the improper designation of the work zone under D.C. Code § 50-2201.02(20). Because, by definition, Ms. Matthews could not be liable for speeding in a work zone without the existence of a work zone, the determination of that issue was essential to liability for purposes of collateral estoppel, and she is barred from relitigating it here.

## V.   <u>Defendant Mayor Bowser Should Be Dismissed from This Lawsuit.</u>

If any claims survive the District's motion to dismiss, official-capacity defendant Mayor Bowser should be dismissed from this case because the District is the real party in interest. *Lopez v. District of Columbia*, 268 F. Supp. 3d 256, 259 (D.D.C. 2017) (quoting *Atchinson v. District of Columbia*, 73 F.3d 418, 424 (D.C. Cir. 1996)) ("A section 1983 suit … against municipal officials in their official capacities is equivalent to a suit against the municipality itself.") (alteration omitted); *Doe v. District of Columbia*, Civil Action No. 08-0656, 2008 U.S. Dist. LEXIS 110348, *1 (D.D.C. Nov. 12, 2008) (denying attempt to name mayor "in his official capacity" as "both futile" and "redundant … [as] the District is already a defendant").

## CONCLUSION

For the foregoing reasons, the Court should grant the District's motion and dismiss plaintiffs' Complaint with prejudice.

Dated:  April 6, 2020.                 Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

TONI MICHELLE JACKSON
Deputy Attorney General
Public Interest Division

/s/ Fernando Amarillas
FERNANDO AMARILLAS [974858]
Chief, Equity Section

/s/ Honey Morton
HONEY MORTON [1019878]
BRENDAN HEATH [1619960]
SHANI C. BROWN [1617726]
Assistant Attorneys General
441 Fourth Street, N.W., Suite 630 South
Washington, D.C. 20001
Phone: (202) 724-6591
Fax: (202) 741-5908
honey.morton@dc.gov

*Counsel for Defendants*