## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TERESA MATTHEWS, *et al.*,<br><br> *Plaintiffs*,<br><br> v.<br><br> DISTRICT OF COLUMBIA,<br><br> *Defendant*. | Civil Action No. 20-0595 (DLF) |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT

## INTRODUCTION

Plaintiffs are seven motorists who allege that the District of Columbia (the District) improperly designated sections of Route 295 as a work zone, or alternatively failed to post the required signs alerting drivers to the existence of the work zone, and thus unlawfully ticketed and imposed doubled civil fines on them and other drivers for speed violations captured by traffic cameras located within the work zone. Plaintiffs seek injunctive and declaratory relief, as well as damages and restitution, bring claims for unjust enrichment and money had and received, and allege violations of the Excessive Fines Clause of the Eighth Amendment and Due Process Clause of the Fourteenth Amendment.

The First Amended Complaint should be dismissed. Plaintiffs lack standing to request injunctive or declaratory relief because they have not alleged any ongoing or imminent risk of future harm. The District modified the boundaries of the Route 295

work zone before this lawsuit was filed, and two of the speed cameras plaintiffs challenge are now outside of the work zone. In addition, the District lifted the 40 miles per hour speed restriction in these areas and is no longer imposing doubled civil fines. Plaintiffs fail to allege any risk of future harm from the remaining speed camera within the work zone. Moreover, plaintiffs Reginald Matthews, Delmar Little and Erica Smith also lack standing to bring any claims because they have suffered no injury, and Makya Little's claims should be dismissed because she failed to exhaust administrative remedies. Beyond plaintiffs' lack of standing, plaintiffs fail to state a claim or any constitutional violation and cannot establish municipal liability under 42 U.S.C. § 1983 (Section 1983). Even if the Court disagrees, plaintiffs Teresa Matthews, James Gartner and Dmitry Bekker's claims are still subject to dismissal under the doctrine of *res judicata* or, alternatively, collateral estoppel, because each was found liable for speeding in a work zone through the administrative process.

## BACKGROUND

On May 23, 2019, the District announced that, because of five large-scale construction projects planned along D.C. Route 295, the speed limit along Route 295 between Exit 1 to the south and East Capitol Street to the north would be reduced from 50 miles per hour to 40 miles per hour from May 24, 2019 through 2021. *See* District Department of Transportation (DDOT) Press Release, DDOT to Reduce Speed Limit in I-295 Corridor Through 2021, May 23, 2019, available at https://ddot.dc.gov/release/ddot-reduce-speed-limit-i-295-corridor-through-2021; *see also* First Am. Compl. (FAC) [11] ¶ 73 (alleging the District recalibrated speed

cameras on this stretch of Route 295 beginning on May 24, 2019). Plaintiffs do not dispute that a significant amount of construction work has occurred—and continues to occur—along Route 295. FAC ¶¶ 19-21, 20-35, 72, 76-77, 81-82.

## I.    Plaintiffs' Allegations

### A.    Pennsylvania Avenue Camera:  Dmitry Bekker, Teresa Matthews and Reginald Matthews

On August 4, 2019, plaintiff Dmitry Bekker was cited for speeding in a southwest bound lane of Route 295, near Pennsylvania Avenue, S.E., after an automated traffic camera at that location (the Pennsylvania Avenue Camera) observed his vehicle travelling 55 miles per hour in a 40 miles per hour work zone. FAC ¶¶ 131, 138. Because the area was designated a work zone, the citation carried a doubled civil penalty of $200. *Id.* ¶ 139. On August 21, 2019, Mr. Bekker contested his citation, but his challenge was denied, and he was found liable for the violation. *Id.* ¶ 146. Mr. Bekker requested reconsideration of the decision on March 28, 2020, and reconsideration was also denied. *Id.* ¶¶ 147-148. Then, on April 26, 2020, he filed an administrative appeal and paid the $200 fine. *Id.* ¶ 149.

On November 8, 2019, plaintiffs Teresa Matthews and Reginald Matthews (together, the Matthewses) were each cited separately for speeding on Route 295 after the Pennsylvania Avenue Camera observed each of their vehicles traveling more than 10 miles per hour above the posted 40 miles per hour speed limit. *See id.* ¶¶ 92, 102 (Teresa Matthews travelling 52 miles per hour); *id.* ¶¶ 113, 122 (Reginald Matthews travelling 55 miles per hour). Because the area was designated a work zone, each citation carried a doubled civil penalty of $200. *Id.* ¶¶ 17, 103, 123. On December 19,

2019, Ms. Matthews admitted liability and paid the $200 fine. *Id.* ¶ 109. Mr. Matthews, on the other hand, contested his ticket, and the notice of infraction was dismissed. *Id.* ¶ 130.

The Matthewses and Mr. Bekker do not dispute that there was a 40 miles per hour speed limit sign posted near the area where they were cited, *see id.* ¶¶ 96, 117, 134-135, that there was a sign posted indicating the area was a work zone, and that another sign alerted drivers that fines for traffic violations would be doubled. *See id.* Instead, the Matthewses and Mr. Bekker allege that the speed limit should not have been reduced from 50 miles per hour to 40 miles per hour and they should not have been ticketed or assessed a doubled civil fine because work was not occurring at the time they were cited and the District failed to post multiple work zone signs as required by statute. *See id.* ¶¶ 97-144.

### B.   Exit 1 Camera:  Erica Smith

Plaintiff Erica Smith alleges that she was cited for speeding on November 23, 2019, after an automated camera located on Route 295, northwest bound near Exit 1 (Exit 1 Camera) observed her vehicle travelling 52 miles per hour in a 40 miles per hour work zone.[1] FAC ¶ 86. Ms. Smith alleges that she did not observe any signs indicating that area of Route 295 was a work zone that the speed limit was reduced to 40 miles per hour, or that fines would be doubled. *Id.* ¶¶ 88-89. Because the area was designated a work zone, the citation carried a doubled civil penalty of $200. *Id.* ¶ 86.

---

[1]     However, this citation was issued to non-party Lisa Smith, not Erica Smith. *See* FAC Ex. C [11-3].

### C.   Exit 2 Camera:  Makya Little, Delmar Little and James Gartner

On March 29, 2020, plaintiffs Makya Little, Delmar Little (together, the Littles) and James Gartner allege they were cited for speeding on Route 295, southwest bound approximately 0.4 miles south of Exit 2 after an automated traffic camera at that location (Exit 2 Camera) observed each of their vehicles travelling more than 10 miles per hour above the 40 miles per hour speed limit. *See id.* ¶ 76 (the Littles travelling 52 miles per hour);[2] *id.* ¶ 81 (James Gartner travelling 53 miles per hour). Because the area was designated as a work zone, each was assessed a doubled civil fine of $200. *Id.* ¶¶ 76, 81. The Littles and Mr. Gartner allege that they did not see any signs indicating this area of Route 295 was a work zone that the speed limit was 40 miles per hour, or that fines were doubled. *Id.* ¶¶ 79, 84. They contend that the speed limit near the Exit 2 Camera should not have been reduced from 50 miles per hour to 40 miles per hour, and they should not have been ticketed or assessed a double civil fine. FAC ¶¶ 80, 85. Plaintiffs further allege that even if it were a work zone, the District failed to post multiple work zone signs as required by law. *Id.* On April 30, 2020, Mr. Gartner's $200 fine was paid. *See* Ex. A, Supplemental Declaration of Lamont Hinton (Hinton Suppl. Decl.) ¶ 7.

### II.   Procedural Background

On January 13, 2020, the Matthewses filed this putative class action in the Superior Court of the District of Columbia, bringing claims for unjust enrichment

---

[2]     A citation was issued to Makya Little, but not Delmar Little. *See* FAC Ex. A [11-1].

(Count I) and money had and received (Count II) based on the collection of doubled civil fines from infractions captured by one speed camera. *See* Compl. [1-1] ¶¶ 65-80. They also asserted violations of the Excessive Fines Clause of the Eighth Amendment (Count III) and the Due Process Clause of the Fourteenth Amendment (Count IV).[3] *Id.* ¶¶ 81-94. On February 28, 2020, the District removed the case to this Court. *See* Notice of Removal [1]. After the District moved to dismiss on April 6, 2020, plaintiffs filed their First Amended Complaint on May 4, 2020, adding the allegations of the other plaintiffs described above and maintaining Counts I-IV. *See generally* FAC.

## STANDARD OF REVIEW

### I.   <u>Federal Rule of Civil Procedure 12(b)(1)</u>

Under Rule 12(b)(1), "[a] court must dismiss a case when it lacks subject matter jurisdiction." *Mykonos v. United States*, 59 F.Supp. 3d 100, 103 (D.D.C. 2014) (quoting *Randolph v. ING Life Ins. & Annuity Co.*, 486 F.Supp. 2d 1, 4 (D.D.C. 2007)). This is true when the plaintiff lacks standing. *See Am. Freedom Law Ctr. v. Obama*, 821 F.3d 44, 49 (D.C. Cir. 2016). In resolving a motion to dismiss for lack of subject matter jurisdiction, "the factual allegations must be presumed true, and plaintiffs must be given every favorable inference that can be drawn from them." *Mykonos*, 59 F.Supp. 3d at 103 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "The court need not, however, accept as true 'a legal conclusion couched as a factual allegation'

---

[3]     Plaintiffs raise their substantive due process claim under the Fourteenth Amendment, which does not apply to the District. *See Bolling v. Sharpe*, 34 U.S. 497, 498 (1954). The Due Process Clause of the Fifth Amendment applies to the District.

or make inferences that are unsupported by the facts set out in the complaint." *Id.* (citations omitted) (quoting *Trudeau v. FTC*, 456 F.3d 178, 193 (D.C. Cir. 2006)).

Also, "in deciding a 12(b)(1) motion, a court need not limit itself to the complaint; rather, it 'may consider such materials outside the pleadings as it deems appropriate to resolve the question [of] whether it has jurisdiction in the case.'" *Toth v. Wells Fargo Bank, N.A.*, 82 F.Supp. 3d 373, 376 (D.D.C. 2015) (citations omitted); *see also Johnson v. Comm'n on Presidential Debates*, 202 F. Supp. 3d 159, 167 (D.D.C. 2016) (taking judicial notice of facts posted on the internet); *Sodexo Operations, LLC v. Not-For-Profit Hosp. Corp.*, 930 F. Supp. 2d 234, 237 n.3 (D.D.C. 2013) (stating that a court may take judicial notice of public records at the motion to dismiss stage).

## II.   Federal Rule of Civil Procedure 12(b)(6)

Dismissal is also appropriate when a party has failed to set forth "a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although the allegations in a complaint must be taken as true, a plaintiff must offer "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Jackson v. District of Columbia*, 826 F. Supp. 2d 109, 120 (D.D.C. 2011). Courts need not accept as true conclusory "assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 679. The Court is not required to adopt "inferences drawn by plaintiffs if such inferences are unsupported by the facts

set out in the complaint." *Kowal v. MCI Commc'ns Corp., Inc.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). "The complaint should be dismissed if it appears beyond doubt that under any reasonable pleading, [plaintiff] will be unable to prove any set of facts that would justify relief." *Bynum v. District of Columbia*, 257 F. Supp. 2d 1 (D.D.C. 2002) (citation omitted).

## ARGUMENT

I.   <u>All Plaintiffs Lack Standing To Seek Prospective Relief, and Plaintiffs Reginald Matthews, Erica Smith and Delmar Little Lack Standing To Bring Any Claims.</u>

Every plaintiff in federal court must meet the constitutional minimum for Article III standing by showing an injury, causation and redressability. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992). "[A] plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Davis v. FEC*, 554 U.S. 724, 734 (2008) (internal quotation marks omitted) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)).

A.   <u>Plaintiffs Lack Standing To Seek Injunctive or Declaratory Relief Because They Do Not Face Any Ongoing or Imminent Future Injury.</u>

In a case "where the plaintiffs seek declaratory and injunctive relief, past injuries alone are insufficient to establish standing." *Dearth v. Holder*, 641 F.3d 499, 501 (D.C. Cir. 2011). Rather, a plaintiff must show that he faces an "ongoing injury or faces an immediate threat of injury." *Id.* (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983)). Thus, there is "a significantly more rigorous burden to establish standing" when parties seek injunctive relief rather than simply a remedy for past injuries. *Swanson Grp. Mfg. LLC v. Jewell*, 790 F.3d 235, 240 (D.C. Cir. 2015)

(quotations omitted) (citing *Chamber of Commerce v. EPA*, 642 F.3d 192, 200 (D.C. Cir. 2011)). Here, Plaintiffs do not have standing to seek injunctive or declaratory relief because they have not shown any ongoing injury or any "imminent future injury." *Swanson*, 790 F.3d at 240; *see also Clapper v. Amnesty Int'l USA*, 133 U.S. 1138, 1150 n.5 (2013) (standing for injunctive relief requires a showing of "substantial risk" the harm will occur).

Plaintiffs filed their First Amended Complaint on May 4, 2020, claiming that they were harmed by the District's demand and collection of unlawfully doubled civil fines for traffic violations captured by speed cameras within an allegedly non-existent or improperly marked work zone along Route 295. *See, e.g.*, FAC ¶¶ 80, 85, 111, 129, 144. Plaintiffs ask the Court, in part, to declare "the [District's] practice of issuing [Automated Traffic Enforcement] ATE violation notices that doubled the civil fines for all non-existent or improperly marked work zones is unlawful and unconstitutional and, therefore, that all such violations are void and unenforceable," *id.* ¶ 216(a), and to grant injunctive relief "prohibiting the [District] from collecting on and/or otherwise enforcing ATE violation notices that double the civil fines for all non-existent or improperly marked work zones on Interstate D.C. 295," *id.* ¶ 216(b).

However, before plaintiffs filed the original Complaint, the District had modified the boundaries of the Route 295 work zone based in part on the near-completion of the Anacostia bridge rehabilitation project. *See* Def.'s Mot. to Dismiss Pls.' Compl. Ex. A [9-3] (Dorsey Decl.) ¶¶ 5-6; *see also* Press Release, Dist. Dep't of Transp., DDOT Revises Speed Reduction Zone in I-295 Corridor as Two Projects Near

Completion (Dec. 9, 2019), *available at* https://ddot.dc.gov/release/ddot-revises-speed-reduction-zone-i-295-corridor-two-projects-near-completion.   The Pennsylvania Avenue Camera and the Exit 1 Camera are now outside the bounds of the work zone, and the District lifted the speed restrictions in these areas. *See* Def.'s Mot. to Dismiss Ex. B [9-4] (Hinton Decl.) ¶¶ 5-6; Hinton Suppl. Decl. ¶¶ 5-6. The speed cameras were recalibrated to issue citations based on the 50 miles per hour speed limit, and the District stopped imposing doubled civil fines for speeding infractions issued by these two cameras. Hinton Decl. ¶¶ 5-6; Hinton Suppl. Decl. ¶ 5, 6 Plaintiffs allege only that the Exit 2 Camera remains within the boundaries of the work zone. *See* FAC ¶¶ 90, 208.

Plaintiffs contend that they are at "substantial risk of being assessed unlawfully doubled fines because [the District's] conduct on Interstate D.C. 295 is continuing and on-going."[4] To establish standing to seek prospective relief, however, the question is not simply whether the District's conduct is ongoing, but whether plaintiffs allege any "on-going harm or the immediate threat of injury" to themselves from that conduct. *Dearth*, 641 F.3d at 501. Plaintiffs fail to make such allegations. Although the Matthewses claim they drive the stretch of Route 295 near the

---

[4]    To the extent plaintiffs base their standing to seek injunctive relief— preliminary or permanent—on their allegation that "plaintiffs may suffer irreversible damage to their credit from threatened collections actions by the Defendant, and the possible reporting of non-payment to credit agencies, be subject to vehicle immobilization or seizure and/or holds on vehicle registration renewal and suffer other harm and inconveniences," FAC ¶ 215, this claim fails. Plaintiffs' speculation that injunctive relief is necessary to prevent future events that are "possible" or "may" occur undermines their claim to standing. *See City of Houston v. Dep't of Housing and Urban Affairs*, 24 F.3d at 1429 n.6 (quoting *Lujan*, 504 U.S. at 560) (harm must "actual or imminent, not conjectural or hypothetical").

Pennsylvania Avenue Camera on a near daily basis, FAC ¶¶ 101, 121, that area is no longer designated as a work zone, the speed limit has returned to 50 miles per hour and the Pennsylvania Avenue Camera is not imposing doubled fines for infractions. *See* Hinton Decl. ¶¶ 5-6; Dorsey Decl. ¶¶ 5-6. The Matthewses do not allege that they drive on Route 295 near the Exit 2 Camera or are otherwise likely to receive any future citations with unlawfully doubled civil fines, and as such, they do not face any immediate threat of future injury and do not have standing to seek injunctive relief.

In contesting his citation, plaintiff Bekker conceded that he "rarely take[s] 295 South," and "will now be aware of the active work-zone project in this area, and will properly adjust [his] speed (if [he] find[s] [him]self driving 295 south again)." *See* FAC Ex. H [11-8] at 2. Because Mr. Bekker is unlikely to drive along Route 295 in the future, he has not alleged any "actual or imminent" harm and therefore lacks standing to seek injunctive relief. *See Lujan*, 504 U.S. at 560. Similarly, none of the remaining plaintiffs alleges that his or her vehicle is likely to be captured again by the only speed camera alleged to remain on Route 295 within the bounds of a work zone—the Exit 2 Camera—and issued another citation with an allegedly unlawful doubled civil fine. Because there is no "continuing violation or the imminence of a future violation," *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 108 (1998), plaintiffs do not have standing to seek declaratory or injunctive relief, and their request should be dismissed.

**B.**   **Plaintiffs Reginald Matthews, Delmar Little and Erica Smith Do Not Have Standing To Bring Any Claims Because They Have Not Alleged Any Injury.**

As noted above, to have standing, a plaintiff must establish that he suffered an injury in fact that is fairly traceable to the challenged conduct and may be redressed by a favorable court decision. *Lujan*, 504 U.S. at 560–61. Additionally, a plaintiff "must show that he 'has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged official conduct and the injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" *Lyons*, 461 U.S. at 101–102 (quoting *Golden v. Zwickler*, 394 U.S. 103, 109–110 (1969)) (other citations omitted).

Although plaintiffs generally allege that they were injured when they were required to pay the doubled civil fines for their traffic infractions in non-existent or improperly marked work zones, *see, e.g.*, FAC ¶¶ 171, 182, 188, 196, Mr. Matthews cannot allege such injury; a hearing examiner dismissed his citation and he was not required to pay the fine.[5] *Id.* ¶ 130. Plaintiff Erica Smith also fails to allege an injury: The District has not issued Ms. Smith any citation for speeding in a work zone or imposed any doubled civil fine. *See* FAC Ex. C [11-3] at 2 (indicating that non-party Lisa Smith is liable for citation number F109647320). Similarly, the District did not issue any notice of violation to Delmar Little. *See* FAC Ex. A [11-1] at 2 (citation

---

[5]   Plaintiffs allege that Mr. Matthews was also harmed by his wife's payment of her fine, presumably based on a theory that as a married couple, they share finances. *See* FAC ¶ 112. If the Court finds he has such a joint claim, it should be analyzed in the same respect as Ms. Matthews's claims and dismissed for the same reasons outlined below.

issued to Makya Little alone). Although there may be "circumstances where it is necessary to grant a third-party standing to assert the rights of others," plaintiffs have failed to establish the requisite "close relationship" between themselves and the allegedly injured parties, or provide any explanation as to why the individuals who received the citations—Makya Little and Lisa Smith—cannot "protect [their] own interests" in this litigation. *See Kowalski v. Tesmer*, 543 U.S. 125, 129-30 (2004); *see also Hughes v. City of Cedar Rapids, Iowa*, 840 F.3d 987, 998 (8th Cir. 2016) (husband's challenge to wife's speeding ticket dismissed because he lacked third-party standing). Reginald Matthews, Erica Smith and Delmar Little each therefore lack standing, and their claims should be dismissed. *See Spokeo Inc. v. Robins*, 136 U.S. 1540, 1547 (2016) ("[I]njury in fact, the first and foremost of standing's three elements … is a constitutional requirement … .") (internal quotations omitted).

**C.** **Plaintiff Makya Little's Claims Should Be Dismissed Because She Has Not Exhausted Administrative Remedies.**

It is a "long-settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Myers v. Bethlehem*, 303 U.S. 41, 50–51 (1938). The requirement that plaintiffs must first seek relief before the appropriate administrative agency promotes judicial efficiency as it "give[s] agencies the opportunity to correct their own errors, afford[s] parties and courts the benefits of agencies' expertise, and compil[es] a record adequate for judicial review." *Lannett Co. v. U.S. Food & Drug Admin.*, 300 F. Supp. 3d 34, 43 (D.D.C. 2017) (quoting *Avocados Plus Inc. v. Veneman*, 370 F.3d 1243, 1247 (D.C. Cir. 2004)).

In the District, the system for adjudication of traffic violations detected by cameras, referred to as Automated Traffic Enforcement (ATE), is governed by the Traffic Adjudication Act, D.C. Code § 50–2301.01, *et. seq.* (2001). Motorists issued citations under this statute have three options to respond: (1) admit to the commission of the infraction by payment of the civil fine; (2) admit with explanation; or (3) deny the commission of the infraction. D.C. Code § 50-2302.05(a). An owner may deny the infraction and contest the ticket either by mail, through the Department of Motor Vehicles (DMV) website, or in person at a walk-in hearing. D.C. Code § 50-2302.05(b)(1). At the hearing, an owner has the right to present testimony and evidence to dispute liability for the infraction and contest the amount of the fine, and the District has the burden to establish the violation by "clear and convincing evidence." D.C. Code § 50-2302.06; 18 D.C.M.R. § 3012. If the owner receives an adverse decision on liability or the amount of the fine, the owner has the right to appeal the decision to an Appeals Board, *see* D.C. Code § 50-2304.02; 18 D.C.M.R. § 3014.6, and ultimately to the D.C. Superior Court. *See* D.C. Code § 50-2304.05.

The District of Columbia Court of Appeals has recognized that a plaintiff's deliberate failure to avail herself of this procedure justifies dismissal of a later complaint challenging her tickets. *See Dorsey v. District of Columbia*, 917 A.2d 639, 640–41 (D.C. 2007); *see also Johnson v. District of Columbia*, 368 F. Supp. 2d 30, 43 (D.D.C. 2005) (examining the D.C. Court of Appeals' interpretation of relevant District statute in weighing whether to dismiss case for failure to exhaust administrative remedies). The court in *Dorsey* rejected plaintiff's contention that it

was futile to contest traffic adjudication hearings, noting that without an administrative appeal, it was "handicapped by the lack of an administrative record and [could] find no compelling reason to excuse [plaintiff] from exhausting his administrative remedies." *Dorsey*, 917 A.2d at 641 (citing *Davis & Assocs. v. Williams*, 892 A.2d 1144 (D.C. 2006)).

Here, plaintiff Makya Little does not allege that she took any action to administratively appeal the citation she challenges here. *See* FAC ¶¶ 76–79. Because Ms. Little chose to leave the status of her citation unresolved, this is the quintessential case in which exhaustion should be required. *See Agomo v. Williams*, Case No. 2002 CA 006520 B, 2003 WL 21949593, at *3 (D.C. Super. Ct. June 12, 2003). An administrative hearing would have allowed the relevant agencies' expertise to be brought to bear, and, if the citation were ultimately dismissed, afforded complete relief to Ms. Little on her claims. *See Johnson*, 368 F. Supp. 2d at 44 (noting that claims for alleged constitutional violations must also be exhausted if "intertwined with a statutory [violation]"). As such, Ms. Little's claims should be dismissed based on her failure to exhaust administrative remedies.

## II.   The Complaint Should Be Dismissed Because Plaintiffs Fail To State Claims for Relief on the Merits.

Even aside from these threshold jurisdictional issues, plaintiffs have failed to state a claim for relief on the merits. Their claims fall short of the pleading standard and should be dismissed. *Iqbal*, 556 U.S. at 678.

A.   **The Amended Complaint Does Not State a Claim for Unjust Enrichment or Money Had and Received.**

In their first claim alleging unjust enrichment, plaintiffs contend that their payment of a doubled civil fine was a benefit conferred upon the District, FAC ¶ 174, and that the District's retention of such a payment "violates the fundamental principles of justice, equity and good conscience, and the circumstances are such that it would be inequitable for the [District] to retain the [payment]." *Id.* ¶ 178.

Unjust enrichment is a legal doctrine rooted in the common law concept of a "quasi-contract." *Jordan Keys & Jessamy, LLP v. St. Paul Fire & Marine Ins. Co.*, 870 A.2d 58, 63 (D.C. 2005). In practice, it serves as a tool for enforcement of a contractual remedy between parties when no valid contract exists. *Id.* (citing Black's Law Dictionary 324 (6th ed. 1990)). The plaintiff must establish:  (1) that he or she conferred a benefit on the defendant; (2) the defendant retained the benefit conferred; and (3) the defendant's retention of the benefit is unjust. *Peart v. D.C. Hous. Auth.*, 972 A.2d 810, 813-14 (D.C. 2009). The third prong in particular is a subjective inquiry properly considered on a case-by-case basis. *Id.* at 814.

Here, no plaintiff can establish all three elements. Mr. Matthews's claim fails on the very first because a hearing officer dismissed his citation and he never paid the District anything. FAC ¶ 130. Thus, he did not confer a "benefit" on the District. Similarly, plaintiffs do not allege that Delmar Little, Makya Little or Erica Smith paid the District anything. *See generally* FAC; *see also* FAC Ex. A (showing citation issued to Makya Little, not Delmar Little), FAC Ex. C (showing citation issued to non-party Lisa Smith, not Erica Smith). As to Ms. Matthews and plaintiff James

Gartner, it is not unjust for the District to retain a fine paid by a driver who admits liability and acknowledges that they were speeding, FAC ¶ 29; Hinton Suppl. Decl. ¶ 7, because "[t]he regulation of highway speed is one of the most pressing obligations of a state." *Agomo v. Fenty*, 916 A.2d 181, 193 (D.C. 2007) (quoting *Smith v. District of Columbia*, 436 A.2d 53, 58 (D.C. 1981)).

Moreover, unjust enrichment is a cause of action based on an implied contract and is, therefore, only appropriate when "there has been no agreement or expression of assent, by word or act, on the part of either party involved." *Jordan Keys*, 870 A.2d at 63 (quoting *Bradkin v. Leverton*, 257 N.E.2d 643 (N.Y. 1970)). Here, by paying the fine, Ms. Matthews and Mr. Gartner admitted liability for the conduct cited in the notices they received, making the District's retention of the fines fully justified. *See* Def.'s Mot. to Dismiss Ex. C [9-5] at 2 ("To Admit: You may admit to the infraction … by paying the fine."). For similar reasons, it is not unjust for the District to retain the fine paid by Mr. Bekker:  his liability for the citation was affirmed by the relevant administrative appeals process. *See* FAC ¶¶ 145-149; Ex. B, May 31, 2020 Traffic Adjudication Appeals Board Final Order (Final Order).

Plaintiffs also bring a claim for money had and received, alleging that the District received money in the form of fines from the plaintiffs, which, "in all fairness," it should be required to return. FAC ¶¶ 181-184. Money had and received is a common law theory "very similar" to unjust enrichment, as it is established "[w]here one person receives money that in equity and good conscience belongs to another." *Credit Lyonnais-N.Y. v. Wash. Strategic Consulting Grp., Inc.*, 886 F. Supp. 92, 93 (D.D.C.

1995) (citing *4934, Inc. v. D.C. Dep't of Emp't Servs.*, 605 A.2d 50, 56 (D.C. 1992) and *Hillyard v. Smither & Mayton, Inc.*, 76 A.2d 166, 167 (D.C. 1950)); *see also Bates v. Nw. Human. Servs., Inc.*, 466 F. Supp.2d 69, 102-03 (D.D.C. 2006) (analyzing a money had and received claim as if one for unjust enrichment). Plaintiffs' claim for money had and received fails for the same reasons their unjust enrichment claim fails. Here, the District never had or received any money from Mr. Matthews, Delmar Little, Mayka Little, or Erica Smith, nor does "equity and good conscience" require that the District reimburse a fine paid by Ms. Matthews and Mr. Gartner following their admission of liability for the underlying citation, or a fine paid by Mr. Bekker following the affirmation of his liability after an administrative appeal. *Cf. Kovach v. District of Columbia*, 805 A.2d 957, 962 n.7 (D.C. 2002) ("There is nothing irrational about the District's decision not to refund fines to persons who have admitted liability.").

## B.   The Amended Complaint Does Not State a Claim for a Violation of the Excessive Fines Clause.

Plaintiffs assert that the District violated their constitutional protection against excessive fines when it imposed doubled civil fines for ATE violations that occurred in an alleged work zone they claim did not exist. FAC ¶¶ 187-188. Plaintiffs are wrong.

The Eighth Amendment to the Constitution prohibits the government from imposing excessive fines. U.S. Const., amend. VIII. "In evaluating a claim under the Excessive Fines Clause, 'the standard of gross disproportionality' requires a court to 'compare the amount of the forfeiture to the gravity of the [] offense. If the amount of

the forfeiture is grossly disproportional to the gravity of the defendant's offense, it is unconstitutional.'" *Pimentel v. City of Los Angeles*, Civil Action No. 14-1371 FMO, 2018 U.S. Dist. LEXIS 85054, at *11 (C.D. Cal. May 21, 2018) (quoting *United States v. Bajakajian*, 524 U.S. 321, 336-37 (1998)). The four factors to consider in weighing proportionality are:  (1) the nature and extent of the crime, (2) whether the violation was related to other illegal activities, (3) the other penalties that may be imposed for the violation, and (4) the extent of the harm caused. *United States v. Bikundi*, 926 F.3d 761, 795 (D.C. Cir. 2019) (citing *Bajakajian*, 524 U.S. 321 at 336-37).

Mr. Matthews's Eighth Amendment claim fails for the same reason his other claims fail:  His notice of infraction was dismissed, and he did not pay any fine, let alone an excessive one. *See* FAC ¶ 130. Similarly, Erica Smith and Delmar Little's claims fail because the District has not imposed any penalty against them as they were not issued any citations. *See* FAC Ex. C at 2 (indicating that non-party Lisa Smith is liable for citation number F109647320); FAC Ex. A at 2 (citation issued to Makya Little alone).

Ms. Matthews and Mr. Bekker's claims also fail because even if the Court credits their allegations that they did not "observe any construction, maintenance, and/or utility work" in this area, FAC ¶ 135, the $200 fine for speeding was not "grossly disproportionate" to the offense and therefore not excessive. *Bajakajian*, 524 U.S. 321, 337 (1998). Ms. Matthews and Mr. Bekker concede they were travelling 52 and 55 miles per hour, respectively, when the posted speed limit was 40 miles per hour. FAC ¶¶ 94-95, 133-34. Ms. Matthews does not even allege that she was

unaware of the reduced speed limit or that she could not see the posted speed limit sign. *Id.* ¶¶ 96-98. Thus, both were travelling at least 12 miles per hour over the posted speed limit—a clear violation of the law—and Ms. Matthews and Mr. Bekker voluntarily paid the $200 fine.

Although Makya Little and James Gartner each allege that they "did not see any signs denoting that the area in which they received their ticket was a work zone, that the speed limit was only forty (40) mph, or that the fines were doubled," FAC ¶¶ 79, 84, their claims fail because the $200 fine for speeding is still not "grossly disproportionate" to the offense and therefore not excessive. *Bajakajian*, 524 U.S. 321, 337 (1998). Ms. Little and Mr. Gartner each received a traffic citation for traveling at least 12 miles per hour above the speed limit in the 40 mile per hour work zone. FAC ¶¶ 76, 81, 86. While they claim not to have seen any signs and that there were "no temporary traffic control devices or signs alerting drivers to the recalibrated speed camera," FAC ¶¶ 78, 83, plaintiffs' own exhibits contradict this assertion. As evidenced by Ms. Little's and Mr. Gartner's citations, there is a temporary shoulder divider and at least one large, orange traffic drum at the work site as well as numerous bright, orange markings. FAC Ex. A; FAC Ex. B. These temporary traffic control devices provide drivers with notice of the work zone and the associated need for drivers to reduce their speed. Even if the speed limit had not been reduced to 40 miles per hour, the $200 was not grossly disproportionate to the offense:  each plaintiff was still driving in excess of the standard 50 miles per hour speed limit. *See Dixon*, 666 F.3d at 1342 ("legitimate interest in deterring speeding to ensure public

safety"); *Mills v. City of Grand Forks*, 614 F.3d 495, 501 (8th Cir. 2010) (finding that cities have an interest in protecting against unsafe drivers and declining to find a speeding fine excessive even when it was greater than that allowed by state law).

In *Pimentel*, the district court analyzed whether the city's fines for parking meter violations were constitutionally excessive. 2018 U.S. Dist. LEXIS 85054, at *11-23. There was no dispute that meter violations caused harm to the city because of their effects on traffic flow, congestion, and fiscal loss. *Id.* at *22. The court held that even if the harm to the city was minimal, imposition of a $63 fine for a parking meter violation, along with any additional penalties, was not grossly disproportionate to the harm so as to violate the Excessive Fines Clause. *Id.* at *23.

Similarly, in *Towers v. City of Chicago*, 173 F.3d 619, 626 (7th Cir. 1999), the court found even the imposition of a $500 fine against the owner of a vehicle in which illegal drugs or firearms were found, whether or not the owner was in possession of the vehicle or aware of the illegal items, was not an excessive or disproportionate penalty. Although $500 was not a small sum, "the City, in fixing the amount, was entitled to take into consideration that the ordinances must perform a deterrent function." The same applies here:  A $200 fine for speeding—which causes countless accidents, injuries and deaths each year—is not grossly disproportionate to the offense. Fines for speeding "are valid municipal endeavors; [l]ike any other exaction, a fine does more than raise revenue: [i]t also discourages the taxed activity." *Idris v. City of Chicago*, 552 F.3d 564, 56 (7th Cir. 2009). The $200 fine here was not excessive

because the District has "a legitimate interest in deterring speeding to ensure public safety." *Dixon v. District of Columbia*, 666 F.3d 1337, 1342 (D.C. Cir. 2011).

### C.   The Amended Complaint Does Not State a Claim Under Substantive Due Process.

Plaintiffs assert that they have a "protectable property interest in the payment of unlawfully doubled fines for traffic violations." FAC ¶ 195. They further allege that the District "unreasonably, arbitrarily and irrationally" imposed and collected doubled civil fines for traffic violations on Route 295 with an "improper purpose (*i.e.*, to raise revenue under the pretext of public safety) [which] is arbitrary and shocks the conscience," *id.* ¶¶ 197-198, violating plaintiffs' substantive due process rights. The claim cannot be sustained.

The Fifth Amendment prohibits the government from depriving people of life, liberty or property without due process of law. U.S. Const., amend. V. To state a claim under substantive due process, plaintiffs must first allege there is a constitutionally recognized property interest at stake. *See Yates v. District of Columbia*, 324 F.3d 724, 725–26 (D.C. Cir. 2003) (asking first whether plaintiff possessed a property interest before evaluating whether the official conduct he complained of was egregious); *George Wash. Univ. v. District of Columbia*, 318 F.3d 203, 206 (D.C. Cir. 2003) (stating that although the "doctrine [of substantive due process] normally imposes only very slight burdens on the government to justify its actions, it imposes none at all in the absence of a liberty or property interest"). The next inquiry is "whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly

be said to shock the contemporary conscience." *Abdelfattah v. U.S. Dep't of Homeland Sec.*, 787 F.3d 524, 540 (D.C. Cir. 2015) (quotations omitted).

> 1. **Plaintiffs Do Not Have a Protected Interest in the Payment of Traffic Fines**.

Before turning to whether government action is so "egregious" as to "shock the contemporary conscience," the Court should "first determine precisely what constitutional right has allegedly been violated." *Harvey*, 798 F.3d at 1049–50. Here, plaintiffs claim they have a "protectable property interest in the payment of unlawfully doubled fines for traffic violations." FAC ¶ 195. This fails under substantive due process for two reasons.

First, the Constitution has an explicit provision protecting against improper fines—the Excessive Fines Clause in the Eighth Amendment. Plaintiffs cannot, therefore, repackage their claim under the general rubric of substantive due process. *See County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998) ("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.") (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994)).

Second, even if plaintiffs could proceed under a substantive due process theory, they have failed to allege the deprivation of a constitutionally cognizable interest in "the payment of unlawfully doubled fines for traffic violations." As already noted, Mr. Matthews did not pay the fine—his notice of infraction was dismissed—so he has suffered no deprivation or harm. FAC ¶ 130. Although he alleges he was "forced to

23

expend substantial time and endure substantial inconvenience fighting this citation," *id.*, that does not constitute a deprivation of the property interest plaintiffs claim to possess. *Id.* ¶ 195. Similarly, Erica Smith and Delmar Little were not assessed a doubled civil fine by the District—lawfully or unlawfully—so they have likewise failed to allege any deprivation or harm. *See* FAC Ex. A at 2; FAC Ex. C at 2.

The remaining plaintiffs' claims fare no better. The Due Process Clause protects only "fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition … and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed." *Washington v. Glucksberg*, 521 U.S. 702, 720–21 (1997) (internal quotations and citations omitted). The Supreme Court and D.C. Circuit have not held a property interest in the payment of traffic fines to be fundamental or "deeply rooted in this Nation's history and tradition." *Id.*; *see also Idris*, 552 F.3d at 566 (holding there is no fundamental property interest in payment of $90 traffic fine); *Gardner v. City of Cleveland*, 656 F. Supp. 2d 751, 761 (N.D. Ohio 2009) (imposition of a $100 civil fine does not implicate any fundamental right). Because plaintiffs have no fundamental interest in the payment of "unlawfully doubled traffic fines," their substantive due process claim fails. *See Abdelfattah*, 787 F.3d at 541 ("[M]erely labeling a government action as arbitrary and capricious, in the absence of a deprivation of life, liberty, or property, will not support a substantive due process claim") (quoting *Singleton v. Cecil*, 176 F.3d 419, 424 (8th Cir. 1999) (en banc)).

### 2. Plaintiffs Do Not Allege Behavior that Shocks the Conscience.

Even if plaintiffs had alleged a protected property interest, a claim for substantive due process must also allege conduct that is "conscience shocking, in a constitutional sense." *Lewis*, 523 U.S. at 846 (internal quotation marks omitted) (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 128 (1992)); *see also Harron v. Town of Franklin*, 660 F.3d 531, 536 (1st Cir. 2011) (explaining that to shock the conscience, action must be "truly outrageous, uncivilized, and intolerable"). The question is whether the conduct itself, not the result, shocks the conscience. *See id.* at 849 ("[L]iability for negligently inflicted harm is categorically beneath the threshold of constitutional due process."); *J.E.C.M. ex rel. Saravia v. Lloyd*, 352 F. Supp. 3d 559, 587 (E.D. Va. 2018) ("To be sufficiently egregious [for a substantive due process violation], the official conduct must do more than produce a harmful or unfortunate result …."). Conduct found to "shock the conscience" includes a police officer forcibly pumping an individual's stomach, *see Rochin v. California,* 342 U.S. 165, 172–73 (1952), and a corrections officer's brutal and repeated beatings of an inmate, *see Norris v. District of Columbia,* 737 F.2d 1148, 1151 (D.C. Cir. 1984).

Nothing in the Amended Complaint comes close to the conscience-shocking standard. Plaintiffs challenge the allegedly unlawful designation of a particular area of highway as a work zone, and the imposition and collection of doubled fines for traffic violations in that area. FAC ¶ 196. This fails to meet the requirement of "egregious" or "outrageous" conduct. *See Abdelfattah*, 787 F.3d at 540. Plaintiffs attempt to support their argument by alleging that the District "has a systemic

custom and practice of configuring its ATE system to maximize revenue," FAC ¶ 201, and that use of the ATE system for an "improper purpose (*i.e.*, to raise revenue under the pretext of public safety) is arbitrary and shocks the conscience," *id.* ¶¶ 197-201. Even if the District operated its traffic enforcement system to maximize revenue— which is disputed—that conduct would not be egregious or shock the conscience in a constitutional sense. *See Idris*, 552 F.3d at 566 ("A system that simultaneously raises money and improves compliance with traffic laws has much to recommend it and cannot be called unconstitutionally whimsical.").

III. **If the Court Finds Plaintiffs Have Sufficiently Alleged a Constitutional Violation, the Amended Complaint Should Still Be Dismissed Because Plaintiffs Cannot Establish Municipal Liability Under Section 1983.**

Section 1983 provides a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. This provision authorizes lawsuits to enforce certain constitutional protections, but "does not provide an avenue for relief every time a state actor violates a federal law." *City of Rancho Palos Verdes v. Abrams*, 544 U.S. 113, 119 (2005). Municipal liability under Section 1983 cannot be predicated on a *respondeat superior* theory. *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 690-91 (1978). Rather, "[p]laintiffs who seek to impose liability on local governments under § 1983 must prove that 'action pursuant to official municipal policy' caused their injury." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (quoting *Monell*, 436 U.S. at 691).

The D.C. Circuit has identified four ways official municipal policy can be demonstrated:   (1) express municipal policy, (2) actions of a final municipal

"policymaker," (3) persistent conduct by non-policymakers (*i.e.*, "custom" with force of law), and (4) "deliberate indifference" to a risk of constitutional injury. *See Baker v. District of Columbia*, 326 F.3d 1302, 1306-07 (D.C. Cir. 2003) (citations omitted). Each theory has its own "elements," which a Section 1983 plaintiff bears the burden of pleading, *Blue v. District of Columbia*, 811 F.3d 14, 20 (D.C. Cir. 2015), and a claim for municipal liability that fails to do "more than recite the requisite causal elements of custom or policy liability" is insufficient. *Smith v. District of Columbia*, 674 F. Supp. 2d 209, 212 (D.D.C. 2009). Only customs that are "so permanent and well settled as to constitute a 'custom or usage' with the force of law" can support a Section 1983 claim. *Dickerson v. District of Columbia*, 315 F. Supp. 3d 446, 456 (D.D.C. 2018) (quoting *Monell*, 436 U.S. at 691); *see also Ryan v. District of Columbia*, 306 F. Supp. 3d 334, 346 (D.D.C. 2018) ("When a plaintiff seeks to establish municipal liability in the absence of an explicit policy, he must allege concentrated, fully packed, precisely delineated scenarios as proof that an unconstitutional policy or custom exists.") Additionally, under any theory, a municipal liability claim separately requires proof of causation—specifically, an "affirmative link" between the alleged municipal policy and the alleged constitutional violation, "such that [the former] was the moving force behind the [latter]." *Baker*, 326 F.3d at 1306.

Here, plaintiffs' theory of municipal liability appears to rest on their allegation that District has a "custom or practice of using ATE for revenue generation," FAC ¶ 1, and that "[t]he institutional revenue incentive drives [the District] to configure its ATE system to maximize revenue in a widespread and persistent manner." *Id.* ¶ 59;

*see also id.* ¶¶ 91, 190, 201. But this allegation alone, even if true, fails to establish municipal liability because there is nothing inherently unlawful or unconstitutional about an automated traffic system that raises revenue. *See Idris*, 552 F.3d at 566 ("That the City's system raises revenue does not condemn it.").

To the extent plaintiffs make the more specific allegation that the District has a custom of unconstitutionally calibrating its ATE cameras and imposing doubled civil fines, *see* FAC ¶¶ 41, 91, they fail to sufficiently allege that such a custom is "permanent and well settled." *Dickerson*, 315 F. Supp. 3d at 456. The Amended Complaint contains factual allegations concerning the allegedly unlawful and unconstitutional use of only three speed cameras within a single work zone. *See* FAC ¶¶ 76–150. When "the complaint sets forth no factual allegations regarding the existence and enforcement of a municipal policy, custom or practice that directly caused the violation … [t]his pleading defect is fatal." *Collington v. District of Columbia*, 828 F. Supp. 2d 210, 215 (D.D.C. 2011); *see also Doe v. District of Columbia*, 796 F.3d 96, 105 (D.C. Cir. 2015) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy.") (quoting *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985) (alteration omitted)). Because there are no allegations regarding the unlawful calibration of ATE cameras or designation of work zones outside one particular

highway improvement project, plaintiffs fail to demonstrate any unlawful custom for purposes of *Monell* liability, and their Section 1983 claims should be dismissed.[6]

## IV.   Plaintiffs Teresa Matthews, James Gartner and Dmitry Bekker's Claims Are Barred by *Res Judicata*; Alternatively, Their Claims Are Barred by Collateral Estoppel.

Even if the Court disagrees with the arguments presented above, Ms. Matthews, Mr. Gartner and Mr. Bekker's claims are still subject to dismissal under the doctrine of *res judicata* or, alternatively, collateral estoppel. As noted above, each was issued a citation for speeding in a work zone after a camera located on Route 295 captured their vehicles travelling more than ten miles per hour above the 40 miles per hour speed limit, and each was assessed a $200 doubled civil fine. FAC ¶¶ 102, 138. Both Ms. Matthews and Mr. Gartner paid the fines for their respective citations. *See* FAC ¶ 109 (Ms. Matthews paid the $200.00 fine on December 19, 2019); Hinton Suppl. Decl. ¶ 7 (Mr. Gartner's citation paid on April 30, 2020). Mr. Bekker contested his citation but was found liable by the hearing officer for the offense of speeding in a work zone.[7] *See* FAC ¶¶ 145-146; FAC Ex. C [11-9] at 2. Because the facts

---

[6]     Plaintiffs also fail to demonstrate an express municipal policy or allege any actions of a policymaker caused their alleged injuries because they argue that the work zone designations in this case were improper under D.C. Code, not that those requirements themselves are unconstitutional. *See, e.g.*, FAC ¶ 80, 207. Thus, it is not the express municipal policy that caused the alleged harm, but rather the District's alleged failure to follow the express policy. *See Davis v. District of Columbia*, 800 F. Supp. 2d 28, 35 (D.D.C. 2011) (holding there is no *Monell* liability where the alleged injury was caused by actions "in violation of" official policy because "policy was not in any way the 'moving force' behind the alleged violations") (emphasis in original); *see also Parrat v. Taylor*, 451 U.S. 527, 537 n.3 (1981).

[7]     Mr. Bekker filed a request for reconsideration of the hearing examiner's decision, which was denied. He then filed an administrative appeal, which was

underlying their claims in this case are the same as those underlying their citations, and they had the opportunity to contest the citations in an administrative hearing and raise constitutional claims through the administrative appeals process, their claims are now barred by *res judicata* or, alternatively, collateral estoppel.

## A.   Teresa Matthews, James Gartner and Dmitry Bekker's Claims Are Barred by *Res Judicata*.

Under District of Columbia law, claims that could have been raised in a prior action, whether or not they were, are ordinarily barred by the doctrine of *res judicata*, or claim preclusion.[8] *Crane v. Crane*, 614 A.2d 935, 938 (D.C. 1992) ("Principles of res judicata preclude a party from raising claims which he or she has already raised, *or had the opportunity to raise*, in an earlier proceeding.") (emphasis in original); *Watergate W., Inc. v. Barclays Bank, S.A.*, 759 A.2d 169, 179 (D.C. 2000) (citing *Patton v. Klein*, 746 A.2d 866, 869-70 (D.C. 1999) ("The doctrine operates to bar in the second action not only claims which were actually raised in the first, but also those arising out of the same transaction which could have been raised.")). "Courts in the District of Columbia use a three-part test in determining the applicability of claim preclusion: '(1) whether the claim was adjudicated finally in the first action; (2) whether the present claim is the same as the claim which was raised or which

---

denied. *See* FAC ¶¶ 147-149; Ex. B, Final Order. Mr. Bekker has the right to appeal the denial within 30 days to the D.C. Superior Court. *See* D.C. Code § 50-2304.05.

[8]   District of Columbia law applies because "[f]ederal courts extend to state court judgments the same preclusive effect those judgments would receive in the originating state." *Brewer v. District of Columbia*, 105 F. Supp. 3d 74, 85–86 (D.D.C. 2015) (citing 28 U.S.C. § 1738); *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984) (holding state court judgments are given the same preclusive effect they would have in the rendering state's courts).

might have been raised in the prior proceeding; and (3) whether the party against whom the plea is asserted was a party or in privity with a party in the prior case.'" *Sheppard v. District of Columbia*, 791 F. Supp. 2d 1, 6 (D.D.C. 2011) (quoting *Youngin's Auto Body v. Dist. of Columbia,* 711 F.Supp.2d 72, 78 (D.D.C.2010)). Applying these principles, Mr. Gartner, Mr. Bekker and Ms. Matthews's claims are barred.

### 1.    Payment of the Fine or a Finding of Liability Are Final Adjudications.

*Res judicata* applies to the findings of administrative proceedings "when the agency is acting in a judicial capacity, resolving disputed issues of fact properly before it which the parties have an adequate opportunity to litigate." *Oubre v. D.C. Dep't of Emp't Servs.*, 630 A.2d 699, 703 (D.C. 1993) (citing *William J. Davis, Inc. v. Young*, 412 A.2d 1187, 1194 (D.C. 1980)). "The threshold inquiry is whether the earlier proceeding is the essential equivalent of a judicial proceeding." *Kovach*, 805 A.2d at 960 (quoting *Oubre*, 630 A.2d at 703).

In *Kovach v. District of Columbia*, the D.C. Court of Appeals found that the administrative hearing process for traffic and motor vehicle violations is judicial in nature, and "supports application of principles of *res judicata*." 805 A.2d at 961. The court based its decision on the procedural protections that exist in this context. *See id.* Perhaps more importantly, the court found that payment of the fine for a violation has the same preclusive effect as an adverse decision rendered after an administrative hearing. *Id.* at 962. Therefore, both the adverse finding of liability

31

against Mr. Bekker and payment of the fines by Ms. Matthews and Mr. Gartner were final adjudications for purposes of *res judicata*.

> 2.   Plaintiffs' Claims Arise from the Same Cause of Action and Could Have Been Raised Through the Administrative Hearing and Appeals Process.

In determining whether a party's claims are barred, the court looks to whether they arise from the same cause of action, *Patton*, 746 A.2d at 870 (D.C. 1999), and whether the claims could have been raised in the prior proceeding. *Crane*, 614 A.2d at 938. In determining whether claims arise from the same cause of action, the court examines whether "there is a common nucleus of facts." *Patton*, 746 A.2d at 870. "Thus, a party is barred from initiating, in a subsequent suit, a claim based on facts 'related in time, space, origin or motivation' to the original case." *Watergate W.*, 759 A.2d at 179 (quoting RESTATEMENT (SECOND) JUDGMENTS § 24(2) (1982)); *see also Faulkner v. Gov't Emps. Ins. Co. (GEICO)*, 618 A.2d 181, 183 (D.C. 1992) ("[T]he nature and scope of a cause of action is determined by the factual nucleus, not the theory on which a plaintiff relies.") (quotations omitted).

Plaintiffs Matthews, Gartner and Bekker's claims in this case arise out of their respective citations for speeding in a work zone, and share the same "factual nucleus" with the underlying citations and the claims that were or could have been raised in an administrative hearing had they contested the citation:  that there was no operative work zone in the area where they were cited, and if there was, the signage was improper. FAC ¶¶81-85, 92-109; *see also Carroll v. City of Cleveland*, 522 F. App'x 299, 304 (6th Cir. 2013) (finding *res judicata* barred federal litigation arising

from a traffic violation, after payment of the fine, because the facts underlying the litigation were "identical to the facts that confronted the plaintiffs when they received their notices of liability"). Instead of paying the fine, Ms. Matthews and Mr. Garnder could have denied the violations—as Mr. Bekker did. *See* FAC ¶¶ 131-144. At an administrative hearing, they would have had the opportunity to present testimony that they did not observe any work in the area and argue that the work zone designation violated D.C. Code § 50-2201.02(20), and therefore the speed limit should have been 50 miles per hour. Further, Ms. Matthews could have presented photographs of the work zone signage and argued, as she does now, that it failed to comply with the requirements of D.C. Code § 50-2201.04c.

Even plaintiffs' constitutional claims and requests for injunctive and declaratory relief could have been raised through the administrative appeals process. *See* D.C. Code § 2-510(a)(3). D.C. Code § 2-510(a)(3) allows a party to raise a constitutional challenge to agency action through judicial review of an administrative decision in D.C. Superior Court. *See, e.g., DeVita v. District of Columbia*, 74 A.3d 714 (D.C. 2013) (deciding a constitutional challenge to the District's use of ATE through a motorist's administrative appeal of an adverse hearing decision finding him liable for speeding). Because these plaintiffs had the opportunity and either failed to raise their claims through the administrative appeals process or were unsuccessful, they are barred by *res judicata* from raising them now. *See Gilles v. Ware*, 615 A.2d 533, 539 (D.C. 1992) (citations omitted) (after "ample opportunity to litigate," plaintiff cannot "create a new cause of action merely by restating his claim" under a different

legal theory); *see also Carroll*, 522 F. App'x at 304 (holding *res judicata* barred motorists' due process claims arising out of traffic infractions where motorists paid the fines instead of contesting the ticket because they could have raised constitutional claims through the administrative appeals process in state court); *Idris*, 552 F.3d at 565 ("Because all plaintiffs had an opportunity to present their contentions in the administrative process, and then to state court, the City might well have had a good argument that claim preclusion bars this litigation. Litigants can't reserve federal issues for a federal court.").

## B.     Alternatively, Teresa Matthews, James Gartner and Dmitry Bekker's Claims Are Barred by Collateral Estoppel.

District of Columbia law also recognizes the doctrine of collateral estoppel (or issue preclusion), which "restricts a party in certain circumstances from relitigating issues or facts actually litigated and necessarily decided in an earlier proceeding." *Kovach*, 805 A.2d at 962 (internal quotation and citation omitted). Collateral estoppel bars a court in a subsequent action from reaching a decision on an issue of fact or law decided in an earlier case where "(1) the issue is actually litigated and (2) determined by a valid, final judgment on the merits; (3) after a full and fair opportunity for litigation by the parties or their privies; (4) under circumstances where the determination was essential to the judgment, and not merely dictum." *Wash. Med. Ctr., Inc. v. Holle*, 573 A.2d 1269, 1283 (D.C. 1990) (citing *Smith*, 562 A.2d at 617); *Ali Baba Co. v. WILCO, Inc.*, 482 A.2d 418, 421 (D.C. 1984)).

For many of the same reasons plaintiffs Matthews, Gartner and Bekker's claims are barred by *res judicata*, they are also barred by collateral estoppel. The

court in *Kovach* held that for purposes of collateral estoppel, payment of a traffic fine—like an administrative hearing—operates as an adjudication of the facts essential to liability for the infraction, and a final decision on the merits. 805 A.2d at 962. Each plaintiff had a full and fair opportunity to challenge liability for the offense through the administrative process based on the same factual issue raised now:  the improper designation of the work zone under D.C. Code § 50-2201.02(20) and unlawful doubling of civil fines. Because plaintiffs' claims here necessarily rely on the absence of a work zone, *see* FAC ¶¶ 172, 182, 190, 199, 213, and the determination of that issue was essential to liability for purposes of collateral estoppel, they are barred from relitigating it here and their claims should be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should grant the District's motion and dismiss plaintiffs' First Amended Complaint with prejudice.

Dated:  June 17, 2020.

Respectfully submitted,

KARL A. RACINE
Attorney General for the District of Columbia

TONI MICHELLE JACKSON
Deputy Attorney General
Public Interest Division

/s/ Fernando Amarillas
FERNANDO AMARILLAS [974858]
Chief, Equity Section

/s/ Honey Morton
HONEY MORTON [1019878]
BRENDAN HEATH [1619960]
SHANI C. BROWN [1617726]

Assistant Attorneys General
441 Fourth Street, N.W., Suite 630 South
Washington, D.C. 20001
Phone: (202) 724-6591
Fax: (202) 741-5908
honey.morton@dc.gov

*Counsel for Defendant*